## Delaware County Newspaper Publishers' Association's Petition

*Solomon L. Hagy,* for petitioner.

MacDade, P. J., February 17, 1943.—This is a petition before the court en banc in behalf of the above association to decree that any information furnished by any newspaper published pursuant to the requirements of rule 155 (*a*) of this court be impounded and withheld from inspection and examination by the public generally and that this court further order that the prothonotary and any other officers of the court into whose custody the application may come or who may

be charged with their safe-keeping be directed to refrain from permitting anyone not duly authorized by us to examine or inspect the said applications or the information contained in them; and further praying that the court grant an extension of time until February 15, 1943, to enable the newspaper publishers who desire to do so to comply with the requirements of the rule of court.

This is an unincorporated association of newspaper publishers in the County of Delaware, all of whom publish weekly newspapers excepting the publisher of the Chester Times, who prints a daily publication for general circulation in the City of Chester and the County of Delaware and has a certified circulation record of many thousands, carrying the figures thereof at its masthead. Incidentally the net paid average for the Chester Times was 27,446 in January, and in February approximated the 28,000 mark. It is public property that there are 345 morning newspapers and 442 evening papers in this country and that the total circulation went up last year to 43,374,850 or one newspaper published every day for three persons of population. This is public information and would not be available to the public interests if records were impounded as requested in the instant case.

While the court stated at the hearing it would extend the time until February 15, 1943, to enable the newspaper publishers to comply with the requirements of rule of court 155($a$), the writer demurred to that part of the prayer which requested that information furnished by various newspaper publishers, pursuant to the requirements of the rule of court, be impounded.

It is apparent, therefore, that some of the weekly newspapers of Delaware County, one of which is the Media News, do not want information of their circulation, advertising rates, etc., to be divulged to competitors or the general public, which prompted the writer to say that he was opposed to impounding the same.

The information to be imparted is to be handled by the prothonotary and a law clerk whose duty it is to check the information and listing for this court, to make sure that the newspapers are qualified to receive "legal" advertisements. If the court haphazardly designated the publication in newspapers which did not qualify under our act of assembly and the act of Congress pertaining to newspapers, then perhaps the legal proceedings would be void. We concluded it was unwise to continue this practice; and hence rule 155(a). In passing it may be noted that daily newspapers are bound by law to publish their circulation. Why should weekly newspapers be exempt for our purposes? The Chester Times, a daily, is a member of this association. It has submitted the requested information to this court. We are assured too, that certain circulation figures and other facts are available upon request whether the filed copy in the prothonotary's office be impounded or not.

Why, therefore, if this information is filed publicly among our records, should the few weekly newspapers not risk publicity too. The following newspapers have already complied with this rule and are not complaining: Chester City News, Chester Times, County Leader, Delaware County Observer, Ledger of Delaware County, Labor Press of Delaware County, Liberal Press, Morton Chronicle, Public Press, Suburban and Wayne Times, Yeadon Courier, Clifton Heights News, Springfield Press, Darby Progress. We are advised by the prothonotary that there are others.

We attach hereto and make part hereof, a letter addressed to this court from Stanley Milne, publisher of the Liberal Press, which has filed the desired information under the rule. It contains succinct statements apropos this opinion and substantial reasons for refusing to impound the information furnished by various newspaper publishers, pursuant to the requirements of the rule.

"Impound" is so little used in the law that the Cyclopedia of Law and Procedure treats it as "to put in a pound; to place cattle, goods, or chattels taken under a distress, in a lawful pound." See, also, Burrill Law Dictionary.

In Bouvier's Law Dictionary, unabridged (3rd rev.), it is said, in addition to the above, that it is to retain in the custody of the law. A suspicious instrument produced at a trial is said to be impounded when it is ordered by the court to be retained, in case criminal proceedings should be taken.

We find nothing in the decisions of the courts or in any act of assembly which gives us the power to impound a public record, filed so that the court may be informed in order intelligently and legally to discharge its duties as enjoined by the law. There is no special property in the petition which we should protect. The very purpose of our rule is to make public the information called for. There is no such special property in this as should move the court to take any action to prevent the publication or communication to other persons for use for legal purposes. If only a judge could take a "peek", then an attorney or other interested party could not inspect the record to learn if the judge had erred in interpreting the information filed respecting circulation, etc. This is not a case where certain papers and documents are required at a trial or where some act of assembly expressly provides for "impounding", as it is familiarly called, under special circumstances, as in replevin. We see no special property in a paper or record in the prothonotary's office, an office of public records, so that its publication or communication to other persons may be prohibited by impounding. How could the inspection of the same be considered as a use for illegal purposes? Certainly to inspect court records at reasonable hours is not an illegal use. If petitioners think they have any special right to be

protected, it can be adequately protected in equity: Bispham's Principles of Equity 850, §566; Dock v. Dock, 180 Pa. 14.

It is a maxim that he who seeks equity must do equity; and it seems to us that even-handed justice requires that the public should have access to óur records in such matters. We think, under all the circumstances, the petitioner's position is inequitable and unfair and for that reason alone we must refuse it the aid of this court.

We make part of this opinion a well-timed editorial from the Yeadon Courier to which we subscribe. It is as follows:

### "EDITORIAL

### THE COURIER HAS NO SECRETS

The recent action of the Delaware County Newspaper Publishers' Association in requesting the court to impound information concerning circulation figures is vigorously disapproved by THE YEADON COURIER, which believes that advertisers and other parties doing business with a newspaper are entitled to know the true facts.

Other papers may desire to shield the truth of their circulation figures from their advertisers—but that does not hold with The Courier. We can give truthful answers to all queries about the number of our readers and subscribers because the figure assures our patrons of satisfaction.

To ask the court to erect a protective barrier around this information seems a furtive effort to acquire a guarantee that embarrassing questions will remain unanswered or can be answered to fit the circumstances."